AO 106 (Rev. 04/10)  Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: s/Stan J. West 7/25/24

*amh*
*7/25/24*

# UNITED STATES DISTRICT COURT
### for the
### Western District of Oklahoma

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*

A blue iPhone, serial number 35759049948678, located
in Secure Storage at ATF in Oklahoma City,
Oklahoma 73114

Case No. M-24-*581*-AMG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 5861(d) | Possession of a Destructive Device |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Chad Oubre, Special Agent, ATF
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __7/25/24__

City and state: __Oklahoma City, Oklahoma__

_____
*Judge's signature*

Amanda Maxfield Green, U.S. Magistrate Judge
_____
*Printed name and title*

## THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Chad Oubre, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.      I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession and further described in **Attachment A**, and the extraction from that property of electronically stored information described in **Attachment B.**

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), a Division of the United States Department of Justice, having been so employed since December 2009.  I am a graduate of the Department of Homeland Security's Criminal Investigator Training program as well as the ATF Special Agent Basic Training Program.  As a Special Agent with ATF, I am vested with the authority to investigate violations of Federal laws including Title 18 of the United States Code.

3.      I have been assigned to the ATF Oklahoma City Field Office since July 2010.  I am familiar with the information contained in this affidavit through personal investigation and/or information received from other law enforcement officers, mentioned herein, who have participated in and/or have contributed documentary reports of their investigative efforts in this matter.

4.      The information contained in this Affidavit is submitted for the limited purpose of establishing probable cause to secure a search warrant for a cellular device: **a blue in color Apple iPhone, IMEI: 35759049948678** (hereinafter, **Subject Device**), as described further in

**Attachment A** (physical description), for evidence of violations of 26 U.S.C. § 5861(d) *possession of a destructive device* as described further in **Attachment B** (description of items to be seized). **Subject Device** is currently located in secure evidence storage at the ATF Oklahoma City Field Office, within the Western District of Oklahoma.

5.      Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

## PROBABLE CAUSE

6.      On May 16, 2024, at approximately 21:07 hours the Norman Fire Department responded to a reported fire located at Rock Creek and Flood Avenue within Cleveland County, which is within the Western District of Oklahoma. Upon arrival, crews observed a fire that had partially burned a building as well. The fire was located on the east exterior of the building, and was extinguished with fire department handlines. The building belonged to the business of Lamb Towing & Recovery, located at 1221 W Rock Creek Rd, Norman, OK. Lamb Towing is located at the intersection of 12th Avenue NW and Rock Creek. Visual observation of the burned area Several broken glass bottles in the area of burned debris (Figure 1).

2

**Figure 1**



Figure 1 is a photograph that depicts the bottles located by Investigator Rigsby within the burned debris.

7.      Investigator Rigsby, from the Norman Fire Department, was called to the scene and the bottles were collected as evidence. While investigator Rigsby was collecting evidence, he observed that at least one of the bottles contained a fabric material that had been inserted into the bottle and that the fabric was partially burned. This is what is known as a Molotov cocktail.

8.      Based on the presence of potential incendiary devices, Investigator Rigsby canvased the area for witnesses and/or surveillance video. Investigator Rigsby located video surveillance from Commercial Glass and Material, located across the street from the building. Investigator Rigsby observed that the surveillance video time stamp was approximately 87 minutes ahead of actual time. The video depicted a black two-door sports car arrive from 12th Ave NW at 20:56 hours (adjusted time). The vehicle parked in a grassy area to the east of the burned building.

9.      The video depicted an individual get out of the driver's side of the vehicle and at 20:59 hours (adjusted time) throw a flaming device from behind some trees at the building. The individual then ran back towards the black vehicle and fled the scene.

3

10.     Investigator Rigsby learned through witness interviews that an individual named Tim Brens had become disgruntled with the business (Lamb Towing) located at this address due to his vehicle having been towed and stored there. Investigator Rigsby learned that Brens' vehicle had been towed to this business by Norman Police on December 30, 2023, and stored at that location. On May 13, 2024, Brens was angry because of the amount of money the business was requiring in order for Brens to retrieve his vehicle and also learned that Lamb Towing had sold the vehicle.

11.     Based on that information, on May 17, 2024, Investigator Rigsby traveled to Brens' apartment located at 1111 Oak Tree #S376, Norman, OK. While driving through the parking lot, Investigator Rigsby located a black two-door sports car bearing license plate LYK-019. Investigator Rigsby contacted Norman dispatch and learned that the vehicle was registered to Tim Brens. Investigator Rigsby also noted that the black sports car registered to Brens visually matched the vehicle seen in the surveillance video previously mentioned. Additionally, Investigator Rigsby noted that the vehicle had mud around the tires, which was consistent with the location in which the suspect vehicle was observed to have parked on the surveillance video.

12.     A search warrant was obtained for location information related to Brens' cellular phone number around the time of the fire. On July 11, 2024, your affiant received the location information from T-Mobile. The information was then taken to FBI Special Agent Kerstetter who is trained in interpreting the location information. It was the opinion of SA Kerstetter that at 20:52 hours on May 16, 2024 (approximately 4 minutes before the adjusted time on the surveillance video), Brens' phone was located near the intersection of 12th Ave NW and Rock Creek in Norman, Oklahoma.

13.     SACFI Oubre provided photographs of the recovered material, the laboratory report, as well as a video clip that depicted the ignition of the fire to Gary Smith. Smith is an

4

Explosives Enforcement Officer with ATF who is trained in destructive device determinations. It was the opinion of Smith that the device utilized by BRENS on May 16, 2024, met the definition of a *destructive device* as defined in Title 26 USC § 5845(f) and 18 USC § 921(a)(4).

14.     On July 17, 2024, a preliminary search of the National Registration and Transfer Record did not indicate any firearms (including destructive devices) registered to BRENS.

15.     On July 19, 2024, the United States filed a criminal complaint against BRENS for possession of a destructive device, in violation of Title 26 USC § 5861(d). See 24-MJ-00567-SM (Doc. 1).

16.     On July 23, 2024, BRENS was arrested with the **Subject Device** on his person.

17.     Your affiant knows through training and experience in previous investigations that people who manufacture and/or possess destructive devices often utilize their cellular phones and other devices to conduct internet searches related to the manufacturing process as well as take photographs of the devices at various points during their construction.

## TECHNICAL TERMS

18.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.      Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of

capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable

6

media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.      GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash

memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

19.    Based on my training, and experience, I know that the **Subject Device** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21.    *Forensic evidence.* As further described in **Attachment B**, this Application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **Subject Device** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Device** because:

a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word

8

processing file).  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c.   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22.   *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant for which I am applying would permit the examination of the **Subject Device** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might

expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

23.    *Manner of execution.*   Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24.    I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the **Subject Device** described in **Attachment A** to seek the items described in **Attachment B.**

Respectfully submitted,

Chad Oubre
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me on this 25th day of July, 2024

AMANDA MAXFIELD GREEN
United States Magistrate Judge

## ATTACHMENT A

1.  The property to be search is **a blue in color Apple iPhone, 35759049948678** (hereinafter, **Subject Device**), which is currently located in secure storage at the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Field Office within the Western District of Oklahoma.  **Subject Device** is depicted below:

 

2.  This warrant authorizes the forensic examination of **Subject Device** for the purpose of identifying the electronically stored information described in **Attachment B**.

## ATTACHMENT B

1.     All records on the **Subject Device**, described in **Attachment A**, that relate to violations of 26 U.S.C. § 5861(d) involving **BRENS** including:

      a.     electronically stored information, including, but not limited to the text messages, multi-media messages, email messages, call logs, photographs, and videos;

      b.     any location data indicating the whereabouts of **Subject Device**;

      c.     any photographs of destructive devices, incendiary devices, or any other similar items;

2.     Evidence of user attribution showing who used or owned the **Subject Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history:

      a.     records of Internet Protocol addresses used;

      b.     records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.